Contracts; performance; defective specifications; commercial impossibility; charge of bad faith of Government officials. — On April 18,1980 the court entered the following order:
Before Friedman, Chief Judge, Cowen, Senior Judge, Nichols, Judge.
This case is or includes a review under the Wunderlich Act, 41 U.S.C. §§321, 322, of a decision by the Armed Services Board of Contract Appeals (ASBCA), ASBCA Nos. 18436 and 18681, 76-1 BCA ¶ 11,653 (1976). The board consolidated appeals of two contracting officer decisions which denied a claim for equitable adjustment of the price under Contract N00104-71-C-A085 (No. 18436) terminated the contract for alleged default, and demanded refund of progress payments (No. 18681). The ASBCA denied both appeals and the suit here followed. There is also a breach claim first asserted here. The usual cross-motions for summary judgment were considered under Rule 166(c) by Senior Trial Judge Mastín G. White and he has submitted a proposed opinion in his usual able and helpful fashion, *744 affirming the ASBCA in all respects, but on somewhat different grounds than the ASBCA’s. We are of the opinion that the ASBCA decision has the support of substantial evidence, embodies no error of law, and is neither arbitrary nor capricious. It is, moreover, commendably careful and detailed. In the circumstances, we see no need for promulgating our own detailed analysis of the case, and instead, we adopt the findings and decision of the ASBCA as our own. Correspondingly, there is no need to search for grounds for decision other than those the ASBCA has stated, except as to the breach claim.
Plaintiff contracted to manufacture a nozzle and fin assembly (assembly) for the Zuni air to ground rocket. This was a production contract, one of the first two awarded using the specifications challenged here. Plaintiffs main contention, which the ASBCA rejected on sufficient grounds, was that the specifications were defective and to produce under them a matter of commercial (or practical) impossibility. Plaintiff did encounter grave production problems, attributed to the tough steel forgings it selected, and mastered the problems and produced some items successfully only after using up its progress payments and running out of working capital. The contractor warrants it can solve problems solvable within the existing state of the art. The ASBCA held, and we agree, that great as the difficulties were, they did not attain the level the law requires for a holding of commercial impossibility. It found, among many other matters, that plaintiff, after having already experienced most of its production difficulties, and been in receipt of a "show cause” letter, in September 1972, 14 months after contract award, requested that its contract quantity be increased by the shortfall in deliveries of a second contractor, who had been already defaulted. Finding 104. The ASBCA considered the production of a third contractor, which delivered most of the assemblies the Navy ultimately obtained, and refused to find that their production conformed to all the specifications that made the plaintiff so much difficulty. Neither did the ASBCA find the contrary. The trial judge, apparently lacking confidence in the other evidence of record, reviewed the testimony and held that the success of this other company in producing *745 more than 100,000 assemblies to the satisfaction of the Navy Department and "all as permitted by the contract specifications” (emphasis supplied) warranted the inference that it did not encounter extraordinary difficulty or excessive cost. It was for the ASBCA, under Wunderlich standards, to decide whether an inference favorable to the feasibility of the specifications could properly be drawn from any particular material in the record. In the circumstances, the ASBCA’s reluctance to draw such an inference had in our view substantial evidentiary support and cannot be disregarded by us.
With regard to the default and reprocurement, plaintiff says the default was improper because the last delivery schedule was unreasonable. Though it had requested the new schedule, it says the request was predicated on the unwritten expectation of a new cash flow, and the schedule was not possible of realization if such flow did not occur. The ASBCA found that the contracting officer took plaintiffs financial situation into account in setting what appeared to be, at the time, a reasonable schedule. The expectation of a new cash flow was based, it appears, on plaintiffs request for an order to it for the amount undelivered under the already defaulted second contract, which would generate more progress payments. Defendant could not be obligated to make a new contract award to a contractor already in financial difficulties, in such a fashion, even if for the purpose of generating a new cash flow. By the analysis used in our recent order, Empresas Electronicas Walser, Inc. v. United States, ante at 686, there is no intent by defendant to be bound to make an award until it makes the award.
Finally, plaintiff attempts to show that defendant administered and terminated the contract in bad faith. This is chiefly based on plaintiffs dark suspicions, not verified by the ASBCA, that defendant either did not properly .test the successful contractor’s assemblies, or, alternatively, knew all along it had specified qualities that were excessive and unnecessary, and therefore knowingly allowed the successful contractor to get away with not satisfying them. This bad faith charge was not made to the ASBCA, to whose deliberations it would have been relevant. Not having the *746 charge before it, the ASBCA naturally made no express findings as to the mental attitude of defendant’s officers. To the extent bad faith allegations tender a breach claim, we note that plaintiff has made no offer of proof and has demanded no trial. Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298 (1976), cert denied, 434 U.S. 830 (1977), sets forth the presumption of good faith enjoyed by public officials, at least in court if not in the press, and the standard of proof required to overcome it. The trial judge also cites Conrac Corp. v. United States, 214 Ct. Cl. 561, 558 F.2d 994 (1977). The plaintiffs brief refers us to a few selected items in the ASBCA record. It is manifestly improper to comb a board record to substantiate a claim of bad faith, of which the opposing party had no notice at the time the record was made. The ASBCA findings do not support the charge, and we agree with the trial judge in rejecting it. We do not agree with his use, as a ground of rejection, of testimony concerning the third contractor’s deliveries and the tests performed thereon, nor do we agree that relevant bad faith can be proved only by proof of malice towards the contractor or a desire to injure him.
If not in the matters already discussed, plaintiff has no defense to the defendant’s counterclaim for unliquidated progress payments in the amount of $556,693.99.
Accordingly, on the ASBCA decision and record, and the motions and briefs here, and after oral argument, the plaintiffs motion for summary judgment is denied, the defendant’s motion for summary judgment is granted, and the petition is dismissed. Judgment for the defendant in the amount of $556,693.99 is entered on its counterclaim.